UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61764-CIV-MARRA/WHITE

HERBERT LEE HATHCOCK, JR.,

     Plaintiff,

vs.

JEFFREY S. COHEN et al.,

     Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried before the Court on August 27, 2007.  Based upon the evidence presented during the bench trial, the argument of counsel and the pro se plaintiff, the post-trial submissions by the parties, and otherwise being duly advised in the premises, the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### I. Introduction

This action is brought pursuant to 42 U.S.C. § 1983 and stems from events surrounding the theft from a gas station convenience store on July 21, 2004, after which Plaintiff Herbert Lee Hathcock, Jr. ("Plaintiff") was arrested in his home without a warrant.  Plaintiff brings an illegal entry claim against Broward County Deputy Sheriffs Michael Clark ("Clark"), Jeffrey Cohen ("Cohen") and Joseph A. Russo ("Russo") (collectively, "Defendants"), the officers involved in the arrest of Plaintiff inside his home.  Defendants assert that their entry into Plaintiff's home without a warrant was justified based on the doctrine of "hot pursuit."

<u>II.  Findings of Fact</u>

On July 21, 2004, at approximately 2:50 p.m., Russo received a dispatched call regarding a theft at a gas station located at 2701 West Atlantic Boulevard, Pompano Beach, Florida.  At the time, Russo was patrolling the shopping plaza directly across the street from the gas station, and therefore arrived at the station shortly thereafter.  Upon his arrival, Russo observed a large crowd of people yelling and pointing down the street.  After conducting witness interviews, Russo was told that Plaintiff had entered the gas station and left with unpaid merchandise.  Two of the gas station attendants followed Plaintiff outside and confronted him.  Plaintiff then turned on his car's ignition and one of the attendants jumped on the hood.  Plaintiff drove erratically from side to side with the attendant on the hood until the attendant eventually fell off.

A witness informed Russo that she knew Plaintiff and could direct Russo to Plaintiff's home, which was only 4 blocks away.   Russo followed the witness to Plaintiff's house and arrived no more than twelve or fifteen minutes after he had first arrived at the gas station.  Clark and Cohen joined Russo outside of Plaintiff's house to provide additional assistance.  Once Defendants ascertained Plaintiff was in the house, they proceeded to ask him to come outside, and although Plaintiff stated that he would emerge, Plaintiff failed to do so.  Eventually, Defendants made the decision to enter the house and arrest Plaintiff.[1]

Plaintiff suffered no actual damages as a result of this incident.[2]

_____

[1] The Probable Cause Affidavit stated there was probable cause to arrest Plaintiff for Robbery with a Weapon, however, the State's Information charged Plaintiff with Felony Battery and Petit Theft.

[2] The death of Plaintiff's dog was not caused by Defendants.  This fact was evidenced by the discrepancy between the testimony of the deputies who attested to the location where Plaintiff's dogs were tied up and the testimony of Plaintiff's mother as to where she found the

<u>III. Conclusions of Law</u>

<u>A. Claims brought pursuant to 42 U.S.C. § 1983</u>

Section 1983 provides a cause of action for constitutional violations committed under color of state law. To prevail, a plaintiff must demonstrate both that a defendant deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law.  <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir.1998). A violation of the Fourth Amendment is cognizable under section 1983. <u>Reyes v. Maschmeier</u>, 446 F.3d 1199, 1202 (11th Cir. 2006).

There is no question here that Defendants acted under color of state law, thus the Court need only address whether Defendants acted in violation of the Fourth Amendment of the United States Constitution.  Because Defendants have raised the defense of qualified immunity, the Court will address the constitutional violation in the context of this defense.

<u>B.  Qualified Immunity</u>

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) <u>quoting</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A defendant who seeks qualified immunity must first establish that he or she was acting within the

---

dead dog.  The Court accepts the testimony of the deputies as to where the dogs were tied up and their testimony that the dogs were in good condition when they left Plaintiff's home.  The Court also rejects any suggestion that Defendants took Plaintiff's rare coin collection.  There was no evidence at trial regarding the coin collection.

scope of his or her discretionary authority.[3]  McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir.

2007).  Once established, the plaintiff must establish that the defendant has violated a

constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Next, the plaintiff must show

that the constitutional violation was "clearly established."  Id.

In examining the "clearly established" prong, the Court's inquiry involves an examination

into "whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1330 (11th Cir. 2006)

quoting Saucier, 533 U.S. at 202.  "The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." Id. at 1330.  In

analyzing "the contours of the right" in the context of a warrantless search of a home, the United

States Supreme Court has stated that government officials should not be personally liable for

reasonably but mistakenly concluding that exigent circumstances exist.  Anderson v. Creighton,

483 U.S. 635, 641 (1987).   In making such a determination, government officials must have

been given "fair and clear notice" and "the unlawfulness [of the act] must be apparent." Bashir,

445 F.3d at 1331 quoting Anderson, 483 U.S. at 640 and Vinyard, 311 F.3d at 1350.  Notice to

officials may be given by federal statute, federal constitutional provision, caselaw decisions of

the United States Supreme Court, United States Court of Appeals for the Eleventh Circuit, and

the Florida Supreme Court.  Id. at 1331.

      1. Constitutional Violation

It is axiomatic that law enforcement officers are prohibited from entering a suspect's

---

[3] There is no question that Defendants were acting within their discretionary authority when they arrested Plaintiff.  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (a police officer who makes an arrest acts within his or her discretionary authority).

4

home without consent or a warrant.  <u>Payton v. New York</u>, 445 U.S. 573 (1980).  However, a

warrantless arrest in a suspect's home is permissible if probable cause and exigent circumstances

are present.  <u>Id.</u> at 590; <u>United States v. Roper</u>, 681 F.2d 1354, 1357 n.1 (11th Cir. 1982).

Probable cause to arrest exists if  "at the moment the arrest was made, the facts and

circumstances within the officers' knowledge and of which they had reasonably trustworthy

information were sufficient to warrant a prudent man in believing that the suspect had committed

or was committing an offense."  <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1079 (11th Cir. 2003)

<u>quoting</u> <u>Dahl v. Holley</u>, 312 F.3d 1228, 1233 (11th Cir. 2002) (internal quotations omitted).

Exigent circumstances arise when "the inevitable delay incident to obtaining a warrant must give

way to an urgent need for *immediate* action."  <u>United States v.  Satterfield</u>, 743 F.2d 827, 844

(11th Cir. 1984) <u>citing</u> <u>United States v. Burgos</u>, 720 F.2d 1520 (11th Cir. 1983) (emphasis in the

original).  Examples of recognized exigent circumstances include: (1) danger of flight or escape;

(2) danger of harm to police officers or the general public; (3) risk of destruction of evidence and

(4) hot pursuit of a fleeing suspect.  <u>United States v. Santa</u>, 236 F.3d 662, 669 (11th Cir. 2000).

The United States Supreme Court addressed the concept of exigent circumstances in

<u>Warden v. Hayden</u>, 387 U.S. 294 (1967).   That case involved an armed robbery in which a

suspect, believed to be armed, fled into a home.  <u>Id.</u> at 297.  Witnesses contacted the police, and

the police arrived at the home less than five minutes after the suspect entered the home.  <u>Id.</u> at

298.  In finding that the police's entry into the home without a warrant was valid, the <u>Warden</u>

Court stated the following:

> [The police] acted reasonably when they entered the house and began to search for a man of
> the description they had been given and for weapons which he had used in the robbery or
> might use against them. The Fourth Amendment does not require police officers to delay in

the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that [the suspect] was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

Id. at 298-99.

Thus, Warden permits a warrantless entry into a home when there is a risk of danger to the police or the public.  In Warden, the risk was apparent based on the suspect's use of a weapon to commit the crime and the possibility that the weapon would be used to escape and elude the police.

The Eleventh Circuit Court of Appeals has also addressed exigent circumstances as it pertains to danger to human life and the need to protect the public in United States v. Holloway, 290 F.3d 1331 (11th Cir. 2002).  In that case, a 911 caller reported hearing gunshots and an argument emanating from the suspect's home.  Id. at 1332-33.  Upon arrival, the police spotted a shotgun and several shell casings on the porch, and decided to enter the residence to check for victims and weapons.  Id. at 1333.  In upholding the warrantless search, the Holloway Court held that "emergency situations involving endangerment to life fall squarely within the exigent circumstances exception."  Id. at 1337.  In so finding, the Court noted that the police act constitutionally when they reasonably believe an emergency exists that calls for an "immediate response to protect the public from imminent danger." Id.

Likewise, the Eleventh Circuit has found exigent circumstances when the police knew that an individual had purchased over 100 guns without proper licenses in a seven-month period, and observed that individual give two boxes of guns to a suspect who then entered his home. United States v. Burgos, 720 F.2d at 1526.  Given that the house was "laden with arms" with "an

unknown number of people inside," the <u>Burgos</u> Court stated that the police officers "could reasonably believe that the household was an arsenal" and that the "threat of injury to the neighborhood and arresting officers justified avoidance of delay involved in obtaining a warrant." <u>Id.</u>

There are other situations that can give rise to a finding of exigent circumstances.  For example, the Eleventh Circuit has upheld warrantless searches of residences based on the danger that narcotics would be destroyed or removed.  <u>See</u> <u>United States v. Tobin</u>, 923 F.2d 1506, 1510-11 (11th Cir. 1991) (<u>en</u> <u>banc</u>); <u>see</u> <u>also</u> <u>United States v. Reid</u>, 69 F.3d 1109, 1113-14 (11th Cir. 1995) (upholding warrantless search based on risk of losing narcotics evidence, risk of flight and danger to public); <u>United States v. Milian-Rodriguez</u>, 759 F.2d 1558, 1565 (11th Cir. 1985) (large quantity of narcotics at risk for being destroyed coupled with the threat of flight and the presence of weapons constituted exigent circumstances to justify entry into home to make arrest); <u>cf.</u> <u>Santa</u>, 236 F.3d at 669 (noting that the exigent circumstances exception to the warrant requirement is compelling in narcotic cases because narcotics can easily be destroyed, but finding no exigent circumstances when occupants of house were not aware that they were under police investigation.)   Likewise, the imminent danger of flight or escape has also been a relevant factor in finding exigent circumstances.  <u>See</u> <u>United States v. Blasco</u>, 702 F.2d 1315, 1326 (11th Cir. 1983) (exigent circumstances existed to enter property where drugs were being off-loaded from boats when boats could have been used by individuals to flee); <u>see</u> <u>also</u> <u>Reid</u>, 69 F.3d 1113-14 (flight of suspect likely based on the loading of a van with narcotics from a house in a subdivision with crowded and narrow roads).

The final exigent circumstance for this Court to address, and the one upon which

Defendants rely for their action in this case, is hot pursuit.  The concept of hot pursuit was analyzed by the United States Supreme Court in <u>United States v. Santana</u>, 427 U.S. 38 (1976).  In <u>Santana</u>, the suspect was standing in the doorway of her house when the police sought to arrest her for distribution of heroin.  <u>Id.</u> at 40.  The suspect retreated into the vestibule of her house, while holding a brown paper bag, and the police officers followed and arrested her.  <u>Id.</u> at 40-41.  The <u>Santana</u> Court characterized the facts of this case as "hot pursuit" and explained that while "hot pursuit means some sort of a chase, [ ] it need not be an extended hue and cry in and about the public streets." <u>Id.</u> at 43 (internal quotations marks omitted).  In other words, the facts of <u>Santana</u> constituted a hot pursuit despite "the fact that the pursuit [ ] ended almost as soon as it began."  <u>Id.</u>  In finding that the "act of retreating into her house" could not "thwart an otherwise proper arrest," the <u>Santana</u> Court stated that the police had a "realistic expectation that any delay would result in destruction of evidence."  <u>Id.</u>

Reiterating its requirement that hot pursuit requires a chase, the United States Supreme Court in <u>Welsh v. Wisconsin</u>, 466 U.S. 740 (1984) characterized a claim of hot pursuit as "unconvincing" when there is no "immediate or continuous pursuit of the [suspect] from the scene of the crime."[4]  <u>Id.</u> at 753.  In that case, the police arrested the suspect in his home, without a warrant, for a noncriminal, traffic offense.  In finding no exigent circumstances, the <u>Welsh</u> Court also noted that there was no threat to the public, given that the suspect had already arrived

---

[4] Previously, in <u>Johnson v. United States</u>, 333 U.S. 10, 16 n.7 (1948), the United States Supreme Court noted that there can be no "hot pursuit" when the suspect was not fleeing, making an attempt to escape, or aware that he or she was surrounded by agents.

at home and had abandoned his car at the scene of the accident.[5]

After careful consideration of the foregoing precedent, the Court concludes that exigent circumstances did not exist to permit Defendants to enter Plaintiff's house without a warrant and effectuate an arrest.  Thus, Defendants' conduct violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.[6]  No comparable facts to the cases discussed herein are present.  To begin, there is no evidence that Plaintiff was armed when he shoplifted the items from the gas station, drove away from the gas station or entered his house.  Nor is there any evidence that Plaintiff had access to guns or other weapons in his home.   Accordingly, the lack of a weapon renders this case unlike Warden, Holloway and Burgos.  In addition, there are no other facts indicative of endangerment to the public, such as reports of victims, explosives, sounds of screaming or the need for medical aid.  See Holloway, 290 F.3d at 1336-37 (recognizing other situations that may give rise to exigent circumstances based on endangerment to life). As such, it would not have been reasonable for the police to conclude that there was any danger to the public or themselves that necessitated foregoing the warrant requirement.

Moreover, Plaintiff possessed no evidence which was at risk of destruction pending the obtaining of an arrest warrant.  Nor was Plaintiff at risk for flight.  Defendants had essentially surrounded Plaintiff's house and there was no evidence that Plaintiff could enter his car from his house. Finally, under Johnson, Santana and Welsh, hot pursuit of Plaintiff did not exist.

---

[5]  The holding of Welsh rested primarily on its finding that the gravity of the offense must be considered in determining whether an exigency existed and that a warrantless arrest in the home for a noncriminal offense was simply unreasonable under the Fourth Amendment.  Welsh, 466 U.S. at 753.

[6] This Court previously adopted the Magistrate Judge's findings that there was arguable, if not actual, probable cause to arrest Plaintiff. (DE 95.)

9

Defendants did not chase Plaintiff into his home. In fact, the police did not even see Plaintiff

enter his home or know firsthand that Plaintiff had returned home.  Instead, an eyewitness at the

scene recognized Plaintiff and told Defendants where Plaintiff lived.  Defendants only

ascertained that Plaintiff was home when they arrived there.  Hence, hot pursuit did not exist and

therefore no urgent need for action existed that required a warrantless arrest.[7]

_____ Exceptions to the warrant requirement are "few in number and carefully delineated."

Welsh, 466 U.S. at 749 quoting United States v. United States District Court, 407 U.S. 297, 318

(1972).  After careful review, the Court finds that the facts of this case do not meet this high

standard.  Accordingly, the Court concludes that Defendants violated Plaintiff's Fourth

Amendment rights when they arrested him in his home without a warrant.

_____ 2.  Clearly Established

Next, the Court must answer the question whether the violation of Plaintiff's Fourth

---

[7] Defendants cite several cases from other jurisdictions that they claim support their argument that hot pursuit applies in this case.  Those cases are distinguishable. State v. Richter, 612 N.W.2d 29 (Wis. 2000) concerns a situation where an eyewitness observed a burglary suspect fleeing from one home into another home.  In this case, there is no eyewitness that saw Plaintiff enter his home after the commission of his crime. Furthermore, a burglar entering another's home gives rise to exigent circumstances whereas a suspect entering his own home does not.  In Munin v. Senkowski, No. 97-CV-250H, 1998 WL 912004 (W.D.N.Y. Oct. 2, 1998) an eyewitnesses directed the police to a home of an *armed* robbery suspect.  The Court in State v. Hendricks, 610 P.2d 940 (Wash. Ct. App. 1980) relied heavily on a circumstance not present here; namely, that contraband would disappear if a warrant had been obtained.  Lastly, United States v. Stubblefield, 621 F.2d 980 (9th Cir. 1980) is likely not good law given that it was decided prior to Welsh.  That case ruled that there was hot pursuit when the police entered a home based on information derived from a car registration as opposed to personally pursuing the suspect from the scene of the crime.   Finally, the Court rejects Defendants' argument that they had the right to enter Plaintiff's home because he was on probation at the time of the offense.  Putting aside whether this fact would provide adequate grounds to support a warrantless arrest in the home, there is no evidence demonstrating that Defendants knew Plaintiff was on probation when they entered his home.

Amendment rights during the warrantless arrest was clearly established in the law to result in Defendants losing their right to qualified immunity.  To answer that question, the Court must examine "the contours of the right" and whether Defendants may have reasonably but mistakenly concluded that exigent circumstances existed to justify a warrantless arrest of Plaintiff inside his home.  In so doing, the Court finds that it was unreasonable for Defendants to conclude, based on the circumstances of this case, that they could arrest Plaintiff in his home without a warrant.

The Court concludes that the law was clearly established that no exigent circumstances existed under the facts of this case, thus making it unreasonable for Defendants to enter Plaintiff's home without an arrest warrant.  Santana and Welsh clearly established that hot pursuit requires a chase of a suspect by the police. When a chase is not present, Warden and its progeny require the presence of dangerous circumstances.  These cases do not stand for the position that the police may enter a home after simply following a trail of clues that leads them to a suspect.  Indeed, Warden hinges its ruling on the fact that an armed robber had entered a home, making it essential that the police act quickly to disarm the suspect.  Likewise, the facts in Holloway and Burgos concerned the presence of arms and the possibility of harm to victims (Holloway) and a dangerous arsenal of firearms that could be used against the police or the neighborhood (Burgos).   No such danger existed in the instant case.[8]

Needless to say, the law does not place any burden on Defendants to demonstrate that the

---

[8] The remaining cases on exigent circumstances regarding the risk of destruction of evidence or flight simply do not pertain to the facts of this case, thus making the question of clearly established law on those points irrelevant.  Indeed, Defendants do not advance any argument that either of those factors influenced their decision to arrest Plaintiff inside his home without a warrant.

law was not clearly established.  The Court, however, will briefly discuss caselaw in this Circuit

to which Defendants could point to advance an argument that the doctrine of hot pursuit is

unclear in this Circuit.  Nonetheless, the Court's discussion demonstrates that such an argument

would be unavailing.

     The former Fifth Circuit referenced the doctrine of hot pursuit in <u>Cartlon v. Estelle</u>, 480

F.2d 759 (5th Cir. 1973).[9]  There, a woman was raped at gunpoint between the hours of 9:30 p.m.

and 11:30 p.m.  <u>Id.</u> at 760.  She went to the hospital, where she was interviewed by the police.

<u>Id.</u>  The victim's boyfriend, who was present at the interview, told police that he knew a person

meeting the description of the rapist and the name of the suspect's employer. <u>Id.</u>  The police then

proceeded to the house of the employer, who provided the address of the suspects's parents.  <u>Id.</u>

The suspect's parents provided the police with their son's address. <u>Id.</u>  The police arrived at the

suspect's home several hours after the rape, entered the home and arrested him.  <u>Id.</u>  The <u>Carlton</u>

Court held that it was unnecessary for the police to obtain an arrest warrant.  <u>Id.</u> at 762.  In so

finding, the <u>Carlton</u> Court stated the following:

> [The police] were not certain of the whereabouts of [the suspect] . . . The pursuit had been
> from one clue to another in the early morning hours; and when they finally arrived at the
> house, *the trail was hot*. They had probable cause to believe that Carlton was the rapist; and
> they knew that if he was, he was armed and potentially dangerous. The need for a prompt
> verification of his whereabouts was great. The reasonable and proper thing for them to do
> upon their arrival was to proceed to the house straightaway, knock on the door, ask if [the
> suspect] was there, and arrest him if he was.

<u>Id.</u> <u>citing</u> <u>Warden v. Hayden</u>, <u>supra</u> (emphasis added).

---

[9] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court
existed on September 30, 1981, handed down by that court prior to the close of business on that
date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and
the bankruptcy courts in the circuit.  <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981)
(<u>en</u> <u>banc</u>).

Given the language "the trail was hot,"[10] this case could be seen as a hot pursuit case, despite the lack of a chase and the passing of several hours between the commission of the crime and the arrest in the home.  There are several reasons, however, why this case cannot be viewed as muddling the hot pursuit doctrine.  First, Carlton was decided before Santana, which held that hot pursuit must involve a chase.  Second, the Court in Carlton states that "labels" such as hot pursuit should be used with "care" and "do not always fit." Id. at 761. Lastly, unlike the instant case, Carlton involved an armed suspect and, as evidenced by its citation to Warden, rested firmly on the exigency created by a dangerous suspect who puts the public at risk.

This last point can also be applied to the Former Fifth Circuit case of United States v. Gaultney, 581 F.2d 1137 (5th Cir. 1978).  In that case, Gilmere, a cohort of the suspect Gaultney, had offered to sell cocaine to undercover federal agents and had been seen leaving Gaultney's apartment with cocaine.  Id. at 1139, 1147. At the same time, several other individuals were seen entering and leaving that house.  Id. at 1147.  The police arrested Gilmere after the undercover officer bought the cocaine.  The agents who were conducting the surveillance on the house then proceeded to enter the house to arrest Gaultney along with others.  Id. at 1145.  The Court held that arresting Gaultney without securing an arrest warrant was proper, and described the situation as "imperative," "absolutely necessary," "urgent," and "compelling."  Id. at 1147.  In comparing the situation to Warden, the Gaultney Court pointed out that the police believed that there was as

---

[10] In using that phrase, Carlton cited Warden. However, Santana noted that Warden was "based on the exigencies of the situation" and "did not use the term hot pursuit or even involve a hot pursuit in the sense that that term would normally be understood." Santana, 427 U.S. at 43 n.3 (internal quotation marks and citations omitted).  Despite that language in Santana, courts frequently make passing references to Warden as a "hot pursuit" case. See, e.g., Welsh, 466 U.S. at 750; Blasco, 702 F.2d at 1324; United States v. Kreimes, 649 F.2d 1185, 1192 (11th Cir. 1981); United States v. Hammack, 604 F.2d 437, 439 n.3 (11th Cir. 1979).

much as ten pounds of cocaine in the house, the house was a "beehive of activity," and the individuals in the house were expecting the return of Gilmere with $20,000.00 from a cocaine sale and his failure to return would "raise flags for people immersed in so dangerous an activity as the cocaine traffic."  Id.  Furthermore, the Gaultney Court characterized the case as hot pursuit, noting that there was a high risk that Gaultney would try to escape with the cocaine and "that the officers were outside the house was no guarantee that the escape of man and contraband could not take place."  Id.  Lastly, the Gaultney Court stated that the officers faced the possibility that the occupants of the house would "try to shoot their way out," which placed the agents on top of a "powder keg."  Id.

Gaultney, a post-Santana decision, uses the term hot pursuit, despite the fact that the police did not chase Gaultney.  In fact, Gaultney was inside the house under police surveillance.  Nonetheless, the facts of Gaultney gave rise to exigent circumstances as evidenced by its citation to Warden.  The police believed that those under surveillance would try to shoot their way out, thus putting the police as well as the community at risk for danger.  Therefore, even if Gaultney could be interpreted as making unclear whether a chase was needed to invoke the doctrine of hot pursuit, the urgent and compelling facts of Gaultney differ significantly from the facts here and make clear that exigent circumstances such as a potential "powder keg" are necessary to justify a warrantless arrest in the home.  In the instant case, there was no evidence that Plaintiff, who was inside his home, was armed or posed any risk to the police.[11]

---

[11] Gaultney stated that police officers stationed outside the home did not guarantee that the suspect would not escape. Id. at 1147. Of course, this cannot be interpreted to mean that, in the absence of exigent circumstances, the police may enter a home without a warrant to prevent an escape when a suspect is inside a home.

Accordingly, after careful review of the controlling cases, the Court concludes that the law of exigent circumstances is clearly established.  The Court concludes that reasonable officers would have understood that under the facts of this case exigent circumstances justifying a warrantless arrest of Plaintiff in his home did not exist and that a warrant to arrest Plaintiff in his home was legally required.  Thus, under the circumstances present here, entry into Plaintiff's home without a warrant was unconstitutional.

C. Damages

Despite the fact that Defendants violated Plaintiff's constitutional right not to be arrested in his home without a warrant, Plaintiff did not suffer any actual damage. Unquestionably, Defendants had probable cause to arrest Defendant for the charges of felony battery and petit theft.  Defendants had located Plaintiff and fully intended to effectuate an arrest.  While Defendants should have first obtained a warrant, there is no doubt if they had sought one, an arrest warrant would have been issued. If Plaintiff continued to refuse to come out of his home and surrender voluntarily, Defendants would have remained outside of his home until the warrant was obtained and executed.  Thus, the only result of Defendants' actions was that Plaintiff was arrested a little sooner than he would have if a warrant had been obtained.  Because Plaintiff would have been arrested in any event if Defendants had not violated his constitutional right, Plaintiff did not suffer any actual damage.  Plaintiff is entitled, however, to a nominal damage award of $1.00.

<u>IV. Conclusion</u>

It is hereby **ORDERED AND ADJUDGED** as follows:

1)      Plaintiff is entitled to nominal damages in the amount of $1.00 based on

Defendants' violation of Plaintiff's Fourth Amendment rights under the United

States Constitution.

2)      Judgment shall be separately entered for Plaintiff.

3)      All pending motions are denied as moot.

4)      The Clerk shall close this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 28th day of February, 2008.

_____

KENNETH A. MARRA
United States District Judge

16